IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:24-CV-00025-KDB-DCK

| | |
|---|---|
| JAMES DECOE,<br><br>    **Plaintiff,**<br><br>v.<br><br>COMMSCOPE, INC. OF NORTH CAROLINA;<br>COMMSCOPE HOLDING COMPANY, INC.;<br>KOEN TER LINDE;<br>ROBYN T. MINGLE; AND<br>TYLER ALLISON SCANNELLA,<br><br>    **Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendants CommScope, Inc. of North Carolina ("CommScope"), CommScope Holding Company, Inc. (together, the "CS Defendants"), Koen ter Linde, Robyn T. Mingle, and Tyler Allison Scannella's (together, the "Individual Defendants," and collectively, the "Defendants") Motion to Dismiss (Doc. No. 8), as well as Plaintiff James DeCoe's Motion to Remand (Doc. No. 11). DeCoe claims that the CS Defendants wrongfully terminated his employment, and the Defendants subsequently denied his benefits owed under CommScope's severance policy, thereby violating North Carolina statutory law and the Employee Retirement Income Security Act of 1974 ("ERISA"). To that end, he also claims tortious inference with his employment against the Individual Defendants. Defendants' Motion to Dismiss contends that (1) ERISA wholly preempts DeCoe's state-law claims and (2) his claims asserted against the Individual Defendants cannot proceed because they are not DeCoe's statutory employers and did not act with malice in connection with his termination.

1

The Court has carefully considered the motions and the parties' briefs and exhibits. For the reasons discussed below, the Court finds that it has subject-matter jurisdiction over this action based on its federal-question jurisdiction under 28 U.S.C. § 1331. However, the Court also finds that the CommScope's severance policy contains ambiguous language that requires development of the record to determine the Defendants' contractual obligations to Plaintiff. Therefore, the Court will **DENY** Defendants' Motion to Dismiss and Plaintiff's Motion to Remand, allowing the parties to proceed with discovery regarding the extent to which Plaintiff is owed benefits under CommScope's severance policy.

## I. LEGAL STANDARD

### A. Motion to Remand, 28 U.S.C. § 1447(c)

Whether a court has subject matter jurisdiction is a "threshold matter" that a court must consider prior to reaching the merits of a dispute. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, (1998); *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006). District courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and Statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Article III of the United States Constitution states that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under . . . the Laws of the United States." U.S. Const. art. III, § 2, cl. 1. Accordingly, 28 U.S.C. § 1331 grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Under 28 U.S.C. § 1441, a defendant may remove a case from state court to federal district court if the district court has original jurisdiction. However, when faced with a motion to remand, a party seeking removal to federal court bears the burden of establishing federal

jurisdiction. *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (quoting *In re Blackwater Security Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006)). Removal jurisdiction raises significant federalism concerns; therefore, in considering a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Goucher Coll. v. Cont'l Cas. Co.*, 541 F. Supp. 3d 642, 647 (D. Md. 2021) (quoting *Richardson v. Phillip Morris Inc.*, 950 F. Supp. 700, 702 (D. Md. 1997)); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999); *Syngenta Crop. Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002).

**B.** **Motion to Dismiss, Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Nevertheless, the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id.* Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests

3

surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

This action arises from the termination of DeCoe's employment at CommScope in Hickory, North Carolina on April 21, 2023. Doc. 1-A at ¶¶ 2–3, 20. Accepting the allegations of the Complaint as true as we must, DeCoe worked at CommScope for seventeen years with "exceptional performance," most recently as Vice President ("VP") of Product Line Management over Network Cable & Connectivity ("NCC") within the Cabling and Connectivity Solutions ("CCS") division. Doc. 1-A at ¶¶ 19–20. In February 2022, DeCoe and then-Global Sales Head Koen ter Linde were candidates for Senior Vice President ("SVP") of NCC, and the CCS President selected ter Linde for the position. Doc. 1-A at ¶¶ 23–24. However, because the CCS President was nearing retirement, ter Linde informed DeCoe that he would "be [his] successor as SVP [] if he became CCS President." Doc. 1-A at ¶¶ 25–27.

During his first three months as SVP, ter Linde eliminated three VP positions as "reductions in force." Doc. 1-A at ¶¶ 28–29. According to CommScope's policy[1] and practice, all three former VPs received severance based on their years of service and accelerated vesting of their unvested stock incentives. Doc. 1-A at ¶¶ 29–30. Likewise, any VP-level employee at CommScope is eligible to collect these benefits when terminated for certain qualifying reasons:

---

[1] The Court considers CommScope's severance policy, which was referenced and quoted in DeCoe's Complaint but not attached to it. *See O'Neill v. Open Water Adventures Inc.*, No. 3:20-CV-00476, 2021 WL 2652950, at *2 (W.D.N.C. June 28, 2021) (citing *Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("[C]ourts are permitted to consider the sufficiency of the allegations set forth in the complaint and documents either attached or incorporated by reference into the complaint.")); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164–66 (4th Cir. 2016) ("A document that is not attached or explicitly incorporated by reference, but that is authentic and integral to the complaint, may be considered without converting the motion to a Rule 56 motion.").

4

"reduction in staff or layoff, position elimination, facility closing, closure of a business unit, organization restructuring, except as otherwise stated in [CommScope's policy], and such other circumstances as [CommScope] deems appropriate for the payment of severance benefits." Doc. 1-A at ¶¶ 30–31.

Following the reorganization, ter Linde transitioned the "Cable" segment of NCC to DeCoe's management, expanding his responsibilities and capacity as VP for Cable & Connectivity. Doc. 1-A at ¶¶ 32–33. By the end of 2022, DeCoe's NCC team generated $2.3 billion in revenue, $200 million above its business plan, and exceeded multiple company goals.[2] Doc. 1-A at ¶¶ 35–38. Consequently, DeCoe earned a "solid" annual performance rating and an incentive bonus 1.6 times higher than expected on March 7, 2023. Doc. 1-A at ¶ 39. Furthermore, the CCS President and Vice President of Marketing appointed DeCoe to help lead the Governor of North Carolina and U.S. Secretary of Commerce on a high-profile tour of CommScope's growing NCC production facility. Doc. 1-A at ¶ 52. Ter Linde was not asked to join the tour and "made comments diminishing [the tour's] importance," but the visit was a public relations success for CommScope, and DeCoe garnered praise for his assistance from company leaders. Doc. 1-A at ¶¶ 53, 60–61. Despite his success, however, DeCoe believed that ter Linde "turned against" him and attempted to "get all [the] credit" for his team's work, particularly after the CCS President officially announced his retirement. Doc. 1-A at ¶¶ 43–45.

In mid-March 2023, CommScope's CEO directed all divisions to minimize costs and "reduce payroll by restructuring" due to CommScope's lukewarm performance during the first quarter. Doc. 1-A at ¶¶ 47, 49. DeCoe drafted a reorganization plan, conferring with ter Linde

---

[2] DeCoe's NCC team also generated $460 million in EBITDA, $80 million over its $380 million plan, and cleared $301 million in sales for the CommScope Next product line, surpassing its $174.9 million goal. Doc. 1-A at ¶¶ 36–38.

5

and other stakeholders in the process. Doc. 1-A at ¶ 50. Meanwhile, DeCoe continued to encounter "hostility" from ter Linde, who allegedly began "attack[ing]" DeCoe and "blaming" him for the NCC team's declining sales. Doc. 1-A at ¶¶ 46–48, 50. When DeCoe raised concerns about ter Linde's behavior to Human Resources Representative Tyler Scannella, she "laughed it off" and described ter Linde as "an acquired taste." Doc. 1-A at ¶ 51.

CommScope launched its first round of staff cuts the next month. Doc. 1-A at ¶ 62. On April 6, 2023, DeCoe presented his revised reorganization plan, including potential layoffs affecting CommScope's operations in Belgium, to ter Linde, Scannella, and the Chief Financial Officer for CCS. Doc. 1-A at ¶¶ 63–64. In response, ter Linde suggested that CommScope "ignore" its severance policy and "offer [the Belgian team] less . . . let them sue," which DeCoe protested. Doc. 1-A at ¶¶ 65–66. DeCoe left on a weeklong vacation the day after his meeting with ter Linde, and he planned to attend a leadership program at the University of North Carolina upon his return. Doc. 1-A at ¶¶ 69–70.

On April 17, 2023, when DeCoe arrived back at CommScope to work for a few hours prior to his scheduled business trip, Scannella and ter Linde called him into a meeting and announced his termination, effective April 21, 2023. Doc. 1-A at ¶¶ 70. Along with the reassignment of his duties and direct reports to the pricing administration head, DeCoe's position, VP of Product Line Management for NCC, was eliminated altogether. Doc. 1-A at ¶¶ 70–71, 74. Moreover, Scannella told DeCoe that he was being fired for poor performance and, as a result, could not collect benefits under CommScope's severance policy. Doc. 1-A at ¶ 72. DeCoe later challenged his termination and denial of severance benefits in an exit interview with the Head of Human Resources, Robyn Mingle. Doc. 1-A at ¶¶ 78–79. Regarding DeCoe's

6

"solid" performance review, among his other achievements throughout 2022, Mingle simply commented that "sometimes solid isn't good enough." Doc. 1-A at ¶ 80.

On December 11, 2023, DeCoe filed suit (the "Complaint") against the Defendants in Catawba County, North Carolina. *See* Doc. 1-A. In his Complaint, DeCoe asserts claims for tortious interference with employment, as well as wrongful termination and unpaid wages in violation of the North Carolina Wage and Hour Act, and alternatively, for denial of benefits pursuant to ERISA § 502, as amended, 29 U.S.C. § 1132 *et seq.* Doc. 1-A at ¶¶ 1–15. Defendants removed DeCoe's Complaint to this Court on January 24, 2024, and filed their pending Motion to Dismiss the Complaint on January 31, 2024. *See* Doc. No. 1; Doc. No. 8. Defendants contend that ERISA is the exclusive remedy for DeCoe's unpaid wage and wrongful termination claims; they also argue that DeCoe failed to advance sufficient facts supporting any claim against the Individual Defendants. Doc. No. 8 at ¶¶ 1–3. On February 14, 2024, DeCoe filed his pending Motion to Remand to state court, maintaining that the Court lacks subject-matter jurisdiction because ERISA does not apply to CommScope's severance policy. Doc. No. 11 at ¶¶ 1, 3. The Motions are fully briefed and ripe for the Court's review.

### III. DISCUSSION

#### A. Motion to Remand under 28 U.S.C. § 1447(c)

In this action, the Court's subject-matter jurisdiction depends on the presence or absence of "federal-question" jurisdiction. 28 U.S.C. § 1331.[3] DeCoe's sole claim allegedly conferring subject-matter jurisdiction seeks recovery of his denied severance benefits under ERISA § 502(a), as amended, 29 U.S.C. § 1132 *et seq.* Federal-question jurisdiction arises only from

---

[3] Because all parties are North Carolina citizens, the Court's diversity jurisdiction is not at issue. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

7

"those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983). Here, DeCoe's "Count III: ERISA § 502 Denial of Benefits" realleges and incorporates his state-law claims because they plausibly arise under federal law. Doc. 1-A at ¶¶ 103–12. Moreover, while DeCoe argues in his Motion to Remand that "ERISA does not apply to CommScope's severance policy," he also acknowledges that ERISA may preempt his state-law claim and identifies CSNC as his "welfare benefits plan" administrator. *See* Doc. 1-A at ¶¶ 13–15; Doc. No. 11; Doc. No. 12 at 1–2.

Because DeCoe asserts a cause of action under ERISA, removal of this action was proper. As noted, a case removed from state court may arise under federal law in two ways: (1) "when federal law creates the cause of action asserted" and (2) "[when] the plaintiff's right to relief [in a state law claim] necessarily depends on resolution of a substantial question of federal law." *Gunn v. Minton*, 568 U.S. 251, 257 (2013); *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677 (2006). DeCoe's Complaint implicates the former. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that [] jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First National Bank*, 299 U.S. 109, 112-13 (1936)). Although DeCoe contends in his Motion to Remand that his pleading was "based only on Defendants' insistence pre-filing that its severance policy is covered by ERISA," the Court must look at the "face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 392; *see* Doc. 1-A; Doc. No. 11 at 1–2. Thus, because Plaintiffs are "the master of the[ir] claim" and have the choice to "avoid federal

8

jurisdiction by exclusive reliance on state law," the Court must read DeCoe's Complaint as it currently stands and, in doing so, finds that a portion of his claim arises under federal law (as it directly alleges). *Id.* In sum, because DeCoe's Complaint asserts a separate claim for denial of unpaid benefits under ERISA, thereby satisfying federal-question jurisdiction, Defendants properly removed his Complaint to this Court and Plaintiff's Motion to Remand will be denied.

### B. Motion to Dismiss, Fed. R. Civ. P. 12(b)(6)

Having determined that DeCoe's pleading under ERISA necessarily raises a federal question, the Court need not yet decide the scope of ERISA preemption or the ultimate merits of Plaintiff's claims. At this early stage of the case, it is sufficient if Plaintiff has alleged facts which make his claims plausible, and the Court finds that he has done so. Indeed, establishing the scope and application of CommScope's severance policy will be a matter of contract, which may involve considering the parties' intent, prior application of the policy, and other issues, all of which will no doubt benefit from a full period of discovery. *See Carolina First Bank v. Stambaugh*, No. 1:10cv174, 2011 WL 6217409, at *5 (W.D.N.C. Dec 14, 2011) ("The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time."). Accordingly, the Court will deny the Motion to Dismiss.

### IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. No. 8) is **DENIED;**

2. Plaintiff's Motion to Remand (Doc. No. 11) is **DENIED;** and

3. This case shall **proceed towards a determination of the merits of Plaintiff's claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 5, 2024

Kenneth D. Bell
United States District Judge